UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY L. POULAKIS,

      Plaintiff,

v.                              CASE NO: 8:07-cv-1176-T-23TGW

MICHAEL ROGERS, et al.,

      Defendants.

_____/

## ORDER

    Pursuant to 42 U.S.C. § 1983, the plaintiff, Jeffrey L. Poulakis ("Poulakis"), sues

the defendants, Michael Rogers ("Rogers") and Eric Stender ("Stender"), for false arrest

in violation of the Fourth Amendment.  The parties submit cross-motions (Doc. 10 and

18) for summary judgment.[1]

### Undisputed Facts

    The City of North Port, Florida, Police Department (the "department") assigned

Rogers, an officer, and Stender, a sergeant, to traffic duty on the morning of November

21, 2006.  Each defendant had completed a law enforcement officer training program in

Florida, had acquired substantial policing experience, and had learned the department's

---

[1] Poulakis's September 30, 2007, response (Doc. 11) to the defendants' motion for summary judgment incorporates a partial motion for summary judgment.  The defendants moved (Doc. 16) to strike the document, and Poulakis assented.  Poulakis filed (Doc. 17) on October 13, 2007, an amended response to the defendants' motion for summary judgment, and filed (Doc. 18) on October 30, 2007, an amended motion for summary judgment to which the defendants responded (Doc. 23) in opposition.  The defendants' motion (Doc. 16) to strike is **GRANTED**.

Standard Operating Procedures.  (Rogers Aff. ¶ 2, 5;[2] Stender Aff. ¶ 4, 5)[3]  After catching Poulakis driving sixty-one miles per hour in a forty miles-per-hour zone, Rogers stopped him for speeding.  (Rogers Aff. ¶ 6)  Rogers observed Poulakis lean down several times before stopping his 1990 Jeep Wrangler.  (Rogers Aff. ¶ 6)  Rogers inquired about Poulakis's "furtive" movement, and Poulakis responded that he had placed a can of beer under the front passenger's seat.  (Rogers Aff. ¶ 6; Stender Aff. ¶ 6; Doc. 1, ¶ 8)  Poulakis also later revealed that the center console, located between the driver's and front passenger's seats, contained a loaded .357 magnum revolver. (Rogers Aff. ¶ 6; Stender Aff. ¶ 6; Doc. 1, ¶ 9)  Rogers found an open can of cold beer under the seat and a loaded revolver in the closed center console.  (Rogers Aff. ¶ 6)  By conducting an electronic search, the defendants learned that Poulakis's concealed weapon permit had expired in June, 2004.  (Rogers Aff. ¶ 6; Stender Aff. ¶ 6; Doc. 1, ¶ 9)  Poulakis explained that Florida law permitted him to keep a firearm in a closed compartment of his vehicle without a permit.  (Rogers Aff. ¶ 6; Stender Aff. ¶ 6)

Due to the location of the revolver, Stender telephoned his supervisor, Lieutenant Kevin Sullivan ("Sullivan"), reported the facts, and asked him to "check" with the State Attorney's Office for the Twelfth Judicial Circuit about the legality of an arrest.  (Rogers Aff. ¶ 6; Sullivan Aff. ¶ 6)[4]  The on-duty assistant state attorney advised that probable

---

[2] "Rogers Aff." means Rogers' July 27, 2007, affidavit.  (Doc. 10, Ex. A)  Rogers had worked as an officer in Massachusetts and Florida for a total of about eight years.  Stender had worked for the department for about thirteen years.

[3] "Stender Aff." means Stender's July 26, 2007, affidavit.  (Doc. 10, Ex. B)

[4] "Sullivan Aff." means Sullivan's July 30, 2007, affidavit.  (Doc. 10, Ex. C)

cause existed to arrest Poulakis for a concealed firearm, and Sullivan relayed the conclusion to the defendants.  (Rogers Aff. ¶ 6; Stender Aff. ¶ 6; Sullivan Aff. ¶ 6) Stender and Rogers arrested Poulakis for carrying a concealed firearm in violation of section 790.01(2), Florida Statutes, and cited Poulakis for speeding and possessing an open container of alcohol in violation of sections 316.189, and 316.1936, Florida Statutes, respectively.  (Rogers Aff. ¶ 6; Stender Aff. ¶ 6)  Poulakis paid the citations and filed the present lawsuit.

Discussion

Rule 56(c), Federal Rules of Civil Procedure, authorizes summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  A material fact relates to a dispute which "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

When a governmental official claims qualified immunity, the initial inquiry is whether the facts, taken in the light most favorable to the plaintiff, show that the governmental official's conduct violated a constitutional right of the plaintiff.  Saucier v. Katz, 533 U.S. 194, 207, 121 S. Ct. 2151 (2001).  If the plaintiff overcomes the burden, the next inquiry is whether the law was "clearly established" such that "a reasonable

official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (internal quotations omitted).[5]

*Violation of a Constitutional Right*

An arrest without probable cause violates the Fourth Amendment right to freedom from "unreasonable searches and seizures." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).  A governmental official has probable cause if the facts and circumstances warrant a belief that the suspect committed or was committing a crime. Storck, 354 F.3d at 1314 (citing Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975)).  "An arrest [must] be objectively reasonable under the totality of the circumstances." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).  An official "need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).  "Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" Montoute, 114 F.3d at 184 (quoting Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 1096-97 (1986)).

Section 790.01, Florida Statutes, prohibits the unlicensed carrying of a "concealed weapon" or "concealed firearm" "on or about" the person.  Section 790.25(5) authorizes the unlicensed carrying of a firearm "within the interior of a private conveyance, without

---

[5] Saucier's test is unnecessary unless the official acted within the scope of his discretionary authority when allegedly acting wrongfully.  The parties agree that Rogers and Stender acted within their discretionary authority during the arrest.

a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use."[6]  Section 790.001 defines "concealed firearm" as "any firearm, . . . which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person."  "'Readily accessible for immediate use' means that a firearm or other weapon is carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person."  "'Securely encased' means in a glove department, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access."

Several Florida appellate cases hold that a firearm or other weapon contained in a closed center console or other closed box is "securely encased" and not a "concealed weapon" or "concealed firearm" within the meaning of the statute.  Dixon v. State, 831 So. 2d 775 (Fla. 4th DCA 2002) (reversing a conviction for carrying a concealed weapon because a switchblade in a closed center console was securely encased); Gemmill v. State, 657 So. 2d 900 (Fla. 4th DCA 1995) (reversing a conviction for carrying a concealed firearm because a pistol in a closed box wedged between the driver and passenger seat was securely encased); Bell v. State, 636 So. 2d 80 (Fla. 2d DCA 1994) (reversing a conviction for carrying a concealed firearm because a revolver in a closed console was securely encased); State v. Gomez, 508 So. 2d 784 (Fla. 5th

---

[6] Similarly, section 790.25(3)(l), Florida Statutes, authorizes the unlicensed carrying of a firearm by "a person traveling by private conveyance when the weapon is securely encased or in a public conveyance when the weapon is securely encased and not in the person's manual possession."

DCA 1987) (affirming the dismissal of a concealed firearm charge because a sheathed knife within a closed center console was securely encased and not readily accessible for immediate use).

Notwithstanding the case law, the defendants claim they arrested Poulakis with probable cause because the revolver they found in the vehicle (1) was not secured in a holster, gun case, or closed box or container and (2) was readily accessible.  The defendants' argument is unavailing.  A closed center console is a closed container "which requires a lid or cover to be opened for access."  Neither party disputes that the defendants found a revolver in the closed center console of Poulakis's vehicle. Considering the firearm's undisputed location, the revolver was "securely encased" and not a "concealed weapon" or "concealed firearm."  The defendants arrested Poulakis without arguable probable cause.

*Clearly Established*

A right is "clearly established" if its contours are sufficiently clear such that "a reasonable official would understand that what he is doing violates that right." Bashir v. Rockdale County, Ga., 445 F.3d 1323 (11th Cir. 2006) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)); see also Hope v. Pelzer, 536 U.S. at 741, 122 S. Ct. at 2516 ("[T]he salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional.")  Sources of law notifying an official of a statutory or constitutional right include (1) specific statutory or constitutional provisions, (2) principles of law articulated in decisions, and (3) factually similar cases decided by state and federal

courts in the jurisdiction.  Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007).

"[A]n officer on duty in the field is entitled to make a reasonable interpretation of the law

he is obligated to enforce."  Habiger v. City of Fargo, 80 F.3d 289, 296 (8th Cir. 1996).

Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 2738 (1982), posits

that qualified immunity may be available if the defendant neither knew nor should have

known of the applicable legal standard because of an "extraordinary circumstance."

Reliance on counsel's advice, combined with other factors, may amount to an

"extraordinary circumstance."  Hollingsworth v. Hill, 110 F.3d 733, 741 (10th Cir. 1997);

Watertown Equip. Co. v. Norwest Bank Watertown, N.A., 830 F.2d 1487, 1495 (8th Cir.

1987).  The reasonableness of an officer's reliance on an attorney's advice depends

upon "(1) whether the attorney was independent, (2) whether the advice addressed the

constitutionality of the proposed action, (3) whether the attorney had all the relevant

facts, and (4) whether the advice was sought before or after the officer's action."  Dixon

v. Wallowa County, 336 F.3d 1013, 1019 (9th Cir. 2003).  Other significant factors

include "the prominence and competence of the attorney(s), and . . . how soon after the

advice was received the disputed action was taken."  Hollingsworth v. Hill, 110 F.3d 733

(10th Cir. 1997).  Several courts have concluded that reliance on counsel strongly

evidences reasonableness.  See, e.g., Cox v. Hainey, 391 F.3d 25, 32 (1st Cir. 2004) (a

state trooper's consultation with an assistant district attorney "buttress[es] the

conclusion that [state trooper's] actions were objectively reasonable); Frye v. Kansas

City Missouri Police Dep't, 375 F.3d 785, 792 (8th Cir. 2004) (officers' consultation with

city attorney demonstrates reasonableness); Wadkins v. Arnold, 214 F.3d 535, 542 (4th

Cir. 2000) (authorization from county prosecutor concerning application for warrants presents compelling evidence of reasonableness); <u>Forman v. Richmond Police Dep't</u>, 104 F.3d 950 (7th Cir. 1997) (a lieutenant's reliance on a county prosecutor's advice provides evidence of good faith and reasonableness).

The defendants claim they reasonably relied on the advice of an on-duty assistant state attorney.[7]  The issue is whether the defendants acted reasonably in arresting the defendant after accurately communicating to the assistant state attorney facts bearing on the proposed arrest and then relying on the assistant state attorney's informed but mistaken legal conclusion as to the constitutionality of the arrest.  Before arresting Poulakis, Stender communicated the relevant facts to Sullivan, who relayed them to the assistant state attorney.  Sullivan inquired about the legality of the proposed arrest, and the assistant state attorney used his independent judgment to conclude that probable cause existed to arrest Poulakis.  Sullivan relayed the conclusion to the defendants, who lacked any basis to doubt Sullivan, the assistant state attorney, or the assistant state attorney's conclusion.  Other than the erroneous advice, the record contains no evidence of the assistant state attorney's lack of competence.  The defendants arrested Poulakis at the scene immediately after receiving the advice.  The defendants acted

---

[7] The defendants also argue that they reasonably relied on advice from Sullivan.  However because Sullivan merely conveyed information from the assistant state attorney and did not give his own advice, the defendants cannot convincingly argue they relied on Sullivan.

reasonably under the circumstances and had no reason to know that they would violate the Fourth Amendment.  Poulakis fails to identify a genuine issue of material fact.[8]

The defendants' motion (Doc. 10) for summary judgment is **GRANTED**, and Poulakis's motion (Doc. 18) for summary judgment is **DENIED**.  The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on August 20, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[8] The success of the advice of counsel defense obviates consideration of the "related crimes" defense.